IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FLO HEALTHCARE SOLUTIONS,
LLC, a Georgia limited liability
company,

   Plaintiff,

     v.

RIOUX VISION, INC., a South
Carolina corporation,

   Defendant.

CIVIL ACTION FILE
NO. 1:06-CV-2600-TWT

ORDER AND OPINION

This is a patent infringement action. It is before the Court for construction of the claims in United States Patent No. 6,721,178.

I. Background

The Plaintiff, Flo Healthcare Solutions, LLC, filed this action against the Defendant, Rioux Vision, Inc., in October 2006 alleging patent infringement. Specifically, Flo complained that Rioux infringed United States Patent No. 6,721,178 (the '178 patent) for a "Mobile Clinical Workstation." In the Amended Answer to Complaint and Counterclaims [Doc. 24], Rioux counterclaimed and plead affirmative defenses that the '178 patent is invalid and unenforceable, and alleged that it does not

meet one or more of the conditions for patentability set for in Title 35 of the United States Code.  The merits of the parties' claims cannot be addressed until the Court determines the proper scope and meaning of the patent claims.  Thus, claim construction is the first step of the analysis.  C.R. Bard, Inc. v. United States Surgical Corp., 388 F.3d 858, 861 (Fed. Cir. 2004).

There are six patent claims at issue: claims 3, 8, 26, 34, and 40.  Claim 3 is dependent upon claim 1.  The disputed term and phrase in claim 3 reads: "a power unit supported on the chassis to supply power to the device and the display screen ... wherein the device is a computing device."  (the '178 patent, claim 3).  One of the disputed terms and phrases in claim 8 reads: "a display screen adjacent to the work surface that is tiltable relative to the work surface."  (the '178 patent, claim 8). Claims 8 and 34 essentially share the same disputed term and phrase of: "a substantially horizontal tray supported by the chassis that defines a work surface."  (, claim 8). Claims 8, 26, and 40 share the same disputed term and phrase which describes "a moveable chassis."  (, claims 8, 26, 40).  Pursuant to the Local Patent Rules, the parties request the Court to construe the disputed terms and phrases.

## II.  Claims Construction Rules

The construction of claims in a patent case is a matter of law for the Court. Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).  In construing patent claims, the Court looks first to the intrinsic evidence.  The intrinsic evidence consists of the patent itself, the claim terms, the specification (or written description), and the patent prosecution history, if in evidence.  Microsoft Corp. v. Multi-Tech Sys., Inc., 357 F.3d 1340, 1346 (Fed. Cir. 2004).  However, not all intrinsic evidence is equal. Digital Biometrics, Inc. v. Identix, Inc., 149 F.3d 1335, 1344 (Fed. Cir. 1998).  First among intrinsic evidence is the claim language.  Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999).  A "bedrock principle" of patent law is that the claims of the patent define the patentee's invention.  Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  Thus, the Court's focus must "begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point out and distinctly claim the subject matter which the patentee regards as his invention."  Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1370 (Fed. Cir. 2005) (quoting Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001)); see also Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995) ("The written description part of the specification itself does not delimit the right to exclude.

That is the function and purpose of claims."). When reading claim language, terms are generally given their ordinary and customary meaning, which is the meaning that the term would have to a person of ordinary skill in the art at the time of the invention. Phillips, 415 F.3d at 1313-14.

As a result, an objective baseline from which to begin a claim construction is to determine how a person of ordinary skill in the relevant art would understand the terms. Phillips, 415 F.3d at 1313. Although "the claims of the patent, not its specifications, measure the invention," Smith v. Snow, 294 U.S. 1, 11 (1935), the person of ordinary skill in the art is deemed to read the claim terms in the context of the entire patent, including the specification, rather than solely in the context of the particular claim in which the disputed term appears. Phillips, 415 F.3d at 1313. For instance, the patentee may act as his own lexicographer and set forth a special definition for a claim term. Id. at 1316.

Claims are part of a "fully integrated written instrument" and, therefore, "must be read in view of the specification, of which they are a part." Phillips, 415 F.3d at 1315. In fact, the specification is "the single best guide to the meaning of a disputed term" and is often dispositive. Id. (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "It is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for

guidance as to the meaning of the claims." Phillips, 415 F.3d at 1317. Nevertheless, the Court must be careful not to read a limitation into a claim from the specification. Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 904 (Fed. Cir. 2004). In particular, the Court cannot limit the invention to the specific examples or preferred embodiments found in the specification. Phillips, 415 F.3d at 1323; see also Resonate Inc. v. Alteon Websystems, Inc., 338 F.3d 1360, 1364-65 (Fed. Cir. 2003) ("[A] particular embodiment appearing in the written description may not be read into a claim when the claim is broader than the embodiment."). In addition to the specification, the prosecution history may be used to determine if the patentee limited the scope of the claims during the patent prosecution. Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1576 (Fed. Cir. 1995). The prosecution history helps to demonstrate how the patentee and the Patent and Trademark Office ("PTO") understood the patent. Phillips, 415 F.3d at 1317. However, because the prosecution history represents the ongoing negotiations between the PTO and the patentee, rather than a final product, it is not as useful as the specification for claim construction purposes. Id.

Extrinsic evidence – such as expert and inventor testimony, dictionaries, and learned treatises – is only considered when the claim language remains genuinely ambiguous after considering all of the patent's intrinsic evidence. Tegal Corp. v.

Tokyo Electron America, Inc., 257 F.3d 1331, 1342 (Fed. Cir. 2001). Although less reliable than the patent and prosecution history in determining construction of claim terms, extrinsic evidence may be used to help the Court understand the technology or educate itself about the invention. Phillips, 415 F.3d at 1317; Vitronics Corp., 90 F.3d at 1584. In particular, because technical dictionaries collect accepted meanings for terms in various scientific and technical fields, they can be useful in claim construction by providing a better understanding of the underlying technology and the way in which one skilled in the art might use the claim terms. Phillips, 415 F.3d at 1318. But extrinsic evidence, including dictionary definitions, cannot be used to vary or contradict the terms of the patent claims. Tegal Corp., 257 F.3d at 1342; see also Vitronics Corp., 90 F.3d at 1584 n.6 (courts are free to consult dictionaries "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents"); Phillips, 415 F.3d at 1322-23.

### III.  Discussion

The parties disagree about the construction of the following phrases and italicized terms present in claims 3, 8, 26, 34, and 40 of the '178 patent: (1) "a substantially horizontal *tray* supported by the chassis that defines a work surface"; (2) "a display screen *adjacent* to the work surface that is tiltable relative to the work surface"; (3) "a *tray* supported by the chassis that defines a work surface"; (4) "a

power unit supported by the chassis to supply power to the device and the display screen . . . wherein the device is a computing *device*"; (5) "a *moveable* chassis."

    A.    <u>"Tray"</u>

Claim 8 describes that the invention is a "mobile workstation" consisting of a "substantially horizontal tray supported by the chassis that defines a work surface." ('178 patent, claim 8). The parties dispute how much of the invention is encompassed by the term "tray." The Plaintiff asserts that a tray is a "receptacle having a top surface, sides and a bottom." (Joint Claim Construction Statement at 5). The Plaintiff's definition includes the entire tray shelf, which visually resembles a shelf upon which a computer monitor could sit, the inside of which could house a computer terminal and keyboard. The Defendant argues that the Plaintiff's definition is too expansive, and points out that the Plaintiff's version of a tray is more like a box. (Def.'s Responsive Claim Construction Br. at 6). Instead, the Defendant defines a tray as "an open receptacle having a top surface, low sides, and a flat bottom." (Joint Claim Construction Statement at 5). Therefore, the Defendant argues that the entire tray shelf should not be included within the tray definition, only the top board upon which a monitor might sit.

The specifications and the entirety of the patent support the Plaintiff's definition. The Defendant's definition of a tray is, in my view, more aligned with the

common understanding of the term.  Certainly, the Defendant's version conjures up images of a regular lunch tray.  However, "[i]mportantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Phillips, 415 F.3d at 1313.  The "proper definition is the 'definition that one of ordinary skill in the art could ascertain from the intrinsic evidence in the record.'" Id. at 1314 (quoting Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 375 F.3d 1341, 1351 (Fed. Cir. 2004)).  Applying that standard to this case, it is clear that a person of ordinary skill in the art could ascertain that the Plaintiff used "tray" to encompass the entire tray shelf.  The definition of tray should be "a receptacle having a top surface, sides and a bottom."  (Joint Claim Construction Statement at 5).

  The intrinsic record is replete with evidence that the Plaintiff used the term "tray" to encompass more than the Defendant allows.  Figures 2A-2D of the patent application show that the entire tray shelf is adjustable in height. In its description of the figures, the patent application states that the figures "[illustrate] the operation of an adjustable-height horizontal tray." (the '178 patent, Col. 4, lines 33-36).  Since the entire tray shelf is adjusted in height in the various figures, one reading the patent materials would understand that the horizontal tray referred to the tray shelf, and not

just the top board. The top board does not adjust at all in relation to the rest of the tray shelf, and thus must be but one part of the "horizontal tray." The same is true for another set of drawings in the patent, figures 9A-9D. Again, they show the height adjustment of the entire tray shelf, which the patent calls the "adjustable-height horizontal tray." (the '178 patent, Col. 4, lines 64-67). Further, "FIG 5A is a side view of the horizontal tray of the mobile workstation." (the '178 patent, Col. 4, lines 44-46). Figure 5A is simply a side view of the entire tray shelf, to which the patent only refers to as the horizontal tray. (the '178 patent, Col. 4, lines 44-46). Another view of the tray shelf, figure 5B, states that the "sides 103 and bottom 104 [of] the horizontal tray may be formed from sheet metal." (the '178 patent, Col. 12, lines 27-43). In figure 5B, numbers 103 and 104 are clearly not part of the top board, but rather components of the tray shelf. The patent seems to recognize that its version of "tray" departs from the more common version: "For example, the chassis **14** may be a model MPC2001 . . . with the standard tray replaced by the horizontal tray **12** shown in FIG 1." (the '178 patent, Col. 8-9). The horizontal tray in figure 1 includes the entire tray shelf.

It is true that at other points the patent refers to a tray which resembles the Defendant's definition. (See, e.g., the '178 patent, Col. 8, lines 14-18) ("When the computer terminal is mounted beneath the horizontal tray, the computer terminal does

not occupy the top surface of the horizontal tray."). However, as stated above, the patent also clearly states that one embodiment of mobile workstation envisions the "horizontal tray" encompassing the entire tray shelf. Because including the horizontal tray as the entire shelf is one of the patent's preferred embodiments, it would be incorrect to exclude that embodiment from the patent. "A claim construction that excludes a preferred embodiment, moreover, is 'rarely, if ever, correct.'" SanDisk Corp. v. Memorex Products, Inc., 415 F.3d 1278, 1285 (Fed. Cir. 2005) (citing Vitronics, 90 F.3d at 1582).

Further, the Plaintiff's definition of tray is not totally alien; there is extrinsic evidence to support it. One source defines a tray as "a removable receptacle . . . in a cabinet, box, trunk, or the like, sometimes forming a drawer." Random House Dictionary (unabridged ed. 2006), Dictionary.com, http://dictionary.reference.com/browse/tray (Last visited October 10, 2007). One can envision the tray apparatus of the '178 patent "forming a drawer" inside of which the computer terminal could sit.

Given the entirety of the patent and extrinsic support for the Plaintiff's claim, the appropriate definition for "tray" is the Plaintiff's submission - a receptacle having a top surface, sides and a bottom.

B.   "Adjacent"

Claim 8 describes the configuration of the invention's "work surface" as "a display screen adjacent to the work surface that is tiltable relative to the work surface." (the '178 patent, claim 8). The Plaintiff seeks to broadly define the term "adjacent." The Plaintiff's version would define adjacent as "close to." (Joint Claim Construction Statement at 5). The Defendant seeks a more restrictive version - "contiguous, adjoining, abutting." (Joint Claim Construction Statement at 5).

Both parties suggest that the intrinsic evidence is not useful here. Both urge, then, that it be given its ordinary and customary meaning. Oddly, though not surprisingly, neither party can agree on the ordinary and customary meaning of the term. The parties cite to varying dictionary definitions as well as Court of Federal Claims interpretations of "adjacent" to support their positions. See, e.g., Chemical Separation Technology, Inc. v. United States, 63 U.S.P.Q.2d 1114 (Ct. Fed. Cl. 2002). As the Federal Circuit noted, "Dictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words and have been used both by our court and the Supreme Court in claim interpretation." Phillips, 415 F.3d at 1322.

Before resorting to dictionary definitions, however, it is necessary to "scrutinize the intrinsic evidence in order to determine the most appropriate definition." Free

Motion Fitness, Inc. v. Cybex Int'l., Inc., 423 F.3d 1343, 1349 (Fed. Cir. 2005). This is because "any reliance on dictionaries [must accord] with the intrinsic evidence." Id. at 1348.

The intrinsic evidence suggests that the term "adjacent" should be used as "close to" as opposed to abutting. The actual claim in dispute - "A mobile workstation, comprising . . . a display screen *adjacent* to the work surface that is tiltable relative to the work surface" is vague even after surveying the patent in relation to the claim. (the '178 patent, claim 8) (emphasis added). However, claim 8 uses the term adjacent in a way that is not in dispute: "A moveable workstation, comprising . . . an input device tray supported *adjacent* to the work surface." (the '178 patent, claim 8) (emphasis added). The patent figures illustrate that although the input device tray is close to the work surface, it does not touch it. (See the '178 patent, Figs. 4B, 10B, 18, 19). The input device tray is below the top work surface, as can be seen clearly where the input device tray is pulled out of the tray shelf. Thus, the more appropriate and consistent definition of adjacent for the '178 patent would be "close to."

One could arguably read claim 8 as stating that the input device tray's support is adjacent to the work surface. In that case, the device's support would abut the top work surface. However, a more straightforward and less strained reading would be

to compare the input device tray's location with the top work surface.  While this claim was a close call (as were other claims in dispute), the intrinsic evidence does in fact support the Plaintiff's definition of "adjacent" as "close to."

    C.    <u>"Device"</u>

Claim 3 describes the invention, in pertinent part, as consisting of "a power unit supported on the chassis to supply power to the device and the display screen . . . wherein the device is a computing device."  (the '178 patent, claim 3).  The Plaintiff seeks to classify the "device" as a computer.  The Defendant argues that the term "device" is indefinite in claim 1.  The parties agree that the term in claim 3 is dependent upon the term in claim 1.  Claim 1 does not describe "the device" in any way.

The Defendant relies on 35 U.S.C. § 112 for the proposition that a patent applicant must draft claims "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  Because claim 1 is indefinite, the Defendant argues, claim 3 must also be indefinite.  However, such a cursory dismissal of the term would be counter to the presumption that each claim of a patent is presumed valid independent of other claims.  35 U.S.C. § 282.  A claim is presumed valid "even though [the dependent claim is] dependent upon an invalid claim."  <u>Id.</u>  In fact, only clear and convincing evidence of indefiniteness can

overcome this presumption. Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1348 (Fed. Cir. 2005). Even "a difficult issue of claim construction does not *ipso facto* result in a holding of indefiniteness." Id. at 1347. Thus, "the failure to provide explicit antecedent basis for terms does not always render a claim indefinite." Energizer Holdings, Inc. v. International Trade Com'n, 435 F.3d 1370 (Fed. Cir. 2006) (quoting The Manual of Patent Examining Procedure § 2173.05 (8th ed. 2004)). Further, a claim will not be invalid for lack of an antecedent basis if the meaning of the claim could reasonably be understood by persons of ordinary skill when read in light of the specification. Energizer Holdings, Inc., 435 F.3d at 1370. "Intrinsic evidence in the form of the patent specification and file history should guide a court toward an acceptable claim construction." Datamize, LLC, 417 F.3d at 1348.

The intrinsic evidence shows that the claim should not fail for indefiniteness. Throughout the patent, it is clear that the device refers to a computer. For instance, the horizontal tray could support "a computer terminal having a display screen." (the '178 patent, Col. 6, lines 2-3). The "horizontal tray [supports] the wireless computer terminal." (the '178 patent, Col. 6, lines 65-67). The specifications describe a workstation with a power unit and battery charger for a "wireless computer terminal." (the '178 patent, Col. 7, lines 20-23). The keyboard within the work station "communicates with the computer terminal through a conventional electrical

connection so that the keyboard can be easily connected to the computer terminal whenever the wireless computer terminal is stored within the mobile workstation." (the '178 patent, Col. 7, lines 49-53).

Although indefinite on its face, the weight of intrinsic evidence that the device was meant to be a computer does not even make this "a difficult issue of claim construction." Datamize, LLC, 417 F.3d at 1348. The device should be defined as a computing device.

### D. "Moveable"

Claims 8, 26, and 40 describe the mobile workstation as being supported by "a moveable chassis." (Joint Claim Construction Statement at 6). The Plaintiff defines the term moveable as "adapted for mobility." (Joint Claim Construction Statement at 6). The Defendant counters with a broader definition and describes the term as "capable of being conveyed from one place to another." (Joint Claim Construction Statement at 6).

The Defendant argues that its limited definition of "moveable" is more consistent with the ordinary meaning of the term. The Defendant argues that many things can be moveable, and yet not mobile. In this vein, the Federal Circuit has cautioned against district courts reading limitations into terms from the specifications in the patent. See, e.g., Phillips, 415 F.3d at 1323. However, Phillips also made clear

that "the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide the best mode for doing so." Id. Sometimes, it is clear from the patent documents that "the claims and the embodiments in the specification [are] to be strictly coextensive." Id. This is such a case. Here, the name of the invention is a "Mobile Clinical Workstation." (the '178 patent, Col. 1). In the "Summary of the Invention," the invention is described as "meet[ing] the needs [of] a mobile workstation that includes a wheeled chassis. . . . A medical practitioner making the rounds can push the mobile workstation from room to room..." (the '178 patent, Col. 2, lines 61-62). When describing the drawings, the patent states that the "chassis includes a dolly assembly that allows an operator, such as a medical practitioner, to easily push the mobile workstation from place to place. (the '178 patent, Col. 8, lines 55-58). Every drawing of the chassis has wheels attached to it. Claim 1 says that the mobile workstation is comprised of a "wheeled chassis." (the '178 patent, claim 1). Even when the chassis is described as "moveable," it is still preceded as being part of "a mobile workstation." (the '178 patent, claims 8, 26, 40). Any person skilled in the art would recognize that the workstation was meant to be wheeled around by practitioners. It is clear that the moveable chassis is indeed adapted for mobility, and not meant to be capable of being conveyed - by any means - from one place to another.

## IV.  Conclusion

For the reasons set forth above, the disputed claims are construed as follows: (1) "tray" means "a receptacle having a top surface, sides and a bottom"; (2) "adjacent" means "close to"; (3) "device" means "computing device"; and (4) "moveable" means "adapted for mobility."

SO ORDERED, this 16 day of November, 2007.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge